NOT FOR PUBLICATION                                                                           (Doc. No. 6)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| John MELVILLE, *on behalf of himself and all others similarly situated*, | : : : : | Case No. 15-8706 (RBK/JS) |
| Plaintiff(s), | : : : | **Opinion** |
| v. | : : | |
| SPARK ENERGY, INC., et al., | : : | |
| Defendant(s). | : : | |

**KUGLER**, United States District Judge:

      Plaintiff John Melville, on behalf of himself and all others similarly situated, brings claims against Defendants Spark Energy, Inc. and Spark Energy Gas, LP ("Spark") for violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. 56:8–1 et seq., breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. This matter is before the Court upon Spark's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 6). For the reasons set forth in this Opinion, Spark's Motion is **GRANTED IN PART**.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

      Spark Energy, Inc. and Spark Energy Gas, LP is an electricity and natural gas supplier in New Jersey. Compl. ¶ 1, 4. Spark became a competing supplier to the local utility Public Service Enterprise Group ("PSE&G") after New Jersey deregulated energy supply in the state. *Id.* ¶ 3–4. Spark offers two types of natural gas plans: a fixed rate plan and a variable rate plan. *Id.* ¶ 6. According to Spark's Customer Disclosure Statement and Terms of Service ("CDS"), the

variable rate plan may change every month "according to market conditions." Compl. Ex. A., at 1–2. Plaintiffs also plead that Spark's advertisements claimed customers who switch to Spark will save money in comparison to their local utility companies; sales representatives said Spark's prices are competitive and will average out over time; and Spark's website stated, "When companies compete for business, you win," "Competition drives prices down," and, "[C]ustomers pay less." *Id.* ¶ 17.

John Melville ("Melville") is a resident of New Jersey. *Id.* ¶ 2. In the summer of 2011, a salesperson from Spark approached Melville's door and told him he would save a minimum of ten percent on his energy bills by switching from PSE&G to Spark. *Id.* ¶ 23. Melville read Spark's website, advertisements, and other representations, and signed up to begin receiving electricity from Spark in October 2011 and natural gas in November 2011. *Id.* ¶ 24. Plaintiffs allege that Spark for the first few months charged rates competitive to PSE&G. *Id.* ¶ 25. Soon after, however, Spark began consistently charging rates up to four times more than PSE&G. *Id.* ¶ 27. Plaintiffs allege that the respective prices under Spark and PSE&G were $0.999 and $0.299 in November 2013, $1.034 and $0.447 in January 2014, $1.299 and $0.408 in February 2014, and $1.399 and $0.294 in March 2014. *Id.* Based on these rates, Plaintiffs argue that Spark did not charge prices that varied according to market conditions, but set prices significantly higher than and unrelated to market rates. *Id.* ¶ 7. As a result of Spark's billing, Melville and other customers allegedly overpaid for natural gas by hundreds of dollars. *Id.* ¶ 8–9, 28.

Plaintiffs filed a Complaint on December 17, 2015, bringing claims under the NJCFA, breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment, on behalf of himself and all others similarly situated (Doc. No. 1). *Id.* ¶ 35–61. Plaintiffs seek money damages. *Id.* ¶ 45, 54, 61. Spark submitted the present Motion to Dismiss on March 14,

2016, asserting the failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 6).

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the non-moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). While "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

In making this determination, the court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice.

3

*Id.* at 131 (quoting *Iqbal*, 556 U.S. at 678). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive a motion to dismiss where a court can only infer that a claim is merely possible rather than plausible. *Id.*

### III. DISCUSSION

#### A. Count I — NJCFA

The NJCFA "is intended to protect consumers by eliminating sharp practices and dealings in the marketing of merchandise and real estate." *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 514 (3d Cir. 2006) (quoting *Lemelledo v. Beneficial Mgmt. Corp. of America*, 150 N.J. 255, 263 (N.J. 1997)). New Jersey courts have repeatedly emphasized that "the [NJ]CFA seeks to protect consumers who purchase 'goods or services generally sold to the public at large.'" *Id.* (quoting *Marascio v. Campanella*, 689 A.2d 852, 856–57 (N.J. Super. Ct. App. Div. 1997)). The NJCFA is "remedial legislation which should be construed liberally." *Real v. Radir Wheels, Inc.*, 969 A.2d 1069, 1075 (N.J. 2009) (quoting *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076, 1079 n.1 (N.J. 2007)).

To make out a prima facie case under the NJCFA, a plaintiff must present evidence of: (1) an unlawful practice by the defendant, (2) an ascertainable loss by the plaintiff, and (3) a causal relationship between the unlawful conduct and the ascertainable loss. *Int'l Union of Operating Eng'gs Local No. 68 Welfare Fund*, 929 A.2d at 1086 (citations omitted); *see also* N.J. Stat. Ann. § 56:8–19. Spark challenges only the first element. Unlawful practices are divided into three categories: affirmative acts, knowing omissions, and regulatory violations. *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994). If the alleged violation entails an

4

affirmative act, the plaintiff has no burden to prove that the defendant intended the unlawful practice. *Id.* For knowing omissions, intent is an essential element. *Id.*

In the instant case, Plaintiffs argue that the CDS, the written agreement between Spark and customers, constituted an unlawful, deceptive, and unconscionable trade practice because it misrepresented that Spark charged for natural gas based on market rates. While the question of whether a practice is unfair is typically a jury question, "where the claim is based on written statements, the court must make the legal determination of whether a practice can be said to be unfair in light of the written statements." *Hassler v. Sovereign Bank*, 374 F. App'x 341, 344 (3d Cir. 2010). Other courts in this District have found that written agreements governing energy plans do not constitute an unlawful practice where the contract stated the plan was a variable rate subject to change at the energy company's discretion, provided the plan would vary based on a numerosity of factors, or contained no guarantee of any percentage savings. *See Urbino v. Ambit Energy Holdings, LLC*, No. Civ. 14-5184 (MAS)(DEA), 2015 WL 4510201, at *4 (D.N.J. July 24, 2015); *Faistl v. Energy Plus Holdings, LLC*, No. Civ. 12-2879 (JLL), 2012 WL 3835815, at *6 (D.N.J. Sept. 4, 2012).

Here, the CDS states that the flex-rate plan uses a rate that "may vary according to market conditions." Compl. Ex. A., at 1–2. Plaintiffs argue that rates charged by Spark were not market-based and, in support, list the rates charged by Spark in comparison to PSE&G during several months from 2013 to 2014. Assuming the factual assertions in the Complaint to be true, the Court finds that Plaintiffs have proffered sufficient evidence to state a claim for relief under the NJCFA. Unlike the cases cited by Spark where the written agreements in question specified that rates vary at the supplier's discretion or a variety of factors, the CDS specifically linked prices to market conditions. Accordingly, Plaintiffs provided comparisons of rates offered by

Spark to those of a competing energy provider. Such evidence supports the allegation that Spark's prices were untethered to those of the market at large. Spark contends that the rates offered by its competitors are irrelevant because the CDS did not guarantee any percentage savings. This argument is unconvincing, however, because PSE&G is a supplier in the energy market; its prices thus serve as at least partial indications of the market rate and are relevant despite the lack of a savings guarantee clause.

A claim under the NJCFA, however, cannot be solely based on a breach of contract. "Breach of contract[] is not per se unfair or unconscionable." *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (1994) (quoting *D'Ercole Sales*, 501 A.2d 990). Here, Plaintiffs supplement their allegations regarding the CDS with contentions that Spark made misrepresentations on advertisements, on its website, and during in-person sales. Spark counters that these statements are puffery and thus not material statements of fact. When a plaintiff alleges an affirmative misrepresentation, the affirmative misrepresentation must be: (1) a material statement of fact; (2) found to be false; and (3) made to induce the buyer to make the purchase. *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 366 (N.J. 1997). A statement is material if: "(a) a reasonable person would attach importance to its existence in determining a choice of action . . . ; or (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it." *Ji v. Palmer*, 755 A.2d 1221, 1228 (N.J. Super. Ct. App. Div. 2000) (citing Restatement (Second) of Torts § 538(2) (1977)). Under the NJCFA, "idle comments or mere puffery" are not material because reasonable consumers do not rely on puffery. *Gennari*, 691 A.2d at 366. Puffery is characterized by "vague, highly subjective claims as opposed to specific, detailed factual assertions. *Hammer v. Vital Pharm., Inc.*, No. Civ. 11-4124, 2012 WL 1018842,

at *7 (D.N.J. Mar. 26, 2012). Claims of "substantial savings," "low, competitive rates," "exceptional value," and "great savings" have been found to be too vague to constitute a violation of the NJCFA. *Urbino*, 2015 WL 4510201, at *5.

The statements in question here assert that Spark's rates will save customers money in comparison to local energy utilities, are competitive, and will average out over time. The Court notes that Spark's general statements regarding competition are vague and likely constitute puffery. However, Spark's representations that customers will pay less in comparison to their local energy suppliers and average out over time are specific enough to form the basis of a NJCFA claim at this point in the litigation. Thus, the Court will not dismiss the NJCFA claim on the grounds of puffery.

Spark also argues that the promise by Spark's sales representative to Melville that he would save a minimum of ten percent is inadmissible under the parol evidence rule. The rule states:

> When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

*Filmlife, Inc. v. Mal "Z" Ena, Inc.*, 598 A.2d 1234, 1235 (N.J. Super. Ct. App. Div. 1991) (quoting 3 Corbin on Contracts § 573 (1960)). Introduction of extrinsic evidence to prove fraud, including a violation of the NJCFA, is an exception to the rule because "it is not offered to alter or vary express terms of a contract, but rather, to avoid the contract or 'to prosecute a separate action predicated upon the fraud.'" *Filmlife*, 598 A.2d at 1235–36 (quoting *Ocean Cape Hotel Corp. v. Masefield Corp.*, 164 A.2d 607, 611 (N.J. Super. Ct. App. Div. 1960)). The fraud exception is limited to matters "extraneous to the writing." *Id.* at 1236. Still, even when extrinsic

7

evidence directly conflicts with a complete and integrated contract, a misrepresentation may be actionable under the NJCFA if a contracting party, presented with a written contract by the other party, justifiably relies on the misrepresentation. *Kalathia v. PMM, Inc.*, 2010 WL 4156769, at *2–3 (N.J. Super. Ct. App. Div. Oct. 25, 2010). The reliance is justifiable when the falsity of the representation is not obvious to one with the plaintiff's knowledge and intelligence in light of the attending circumstances. *Id.* Here, assuming that Spark's representation of a ten percent savings directly conflicts with the CDS, Plaintiffs' NJCFA claim nonetheless qualifies for the *Kalathia* exception. Like in *Kalathia*, the contract was unilaterally drafted and boilerplate, Melville is a consumer dealing with a sophisticated player, and Melville was induced to enter the agreement by a promise of savings. *See id.* at *3. The Court refrains from dismissing the NJCFA claim on the basis of the parol evidence rule.

Lastly, Spark contends that the Complaint fails to meet the requirements of Federal Rule of Civil Procedure 9(b). As with common law and equitable fraud, a NJCFA violation must be plead with particularity pursuant to Rule 9(b). *See Frederico v. Home Depot*, 507 F.3d 188, 202–03 (3d Cir. 2007). The plaintiff can satisfy the Rule 9 requirement by: (1) pleading the date, place, or time of the fraud; or (2) otherwise injecting precision and some measure of substantiation in the allegations of fraud. *Id.* at 200. Other courts in the District have found the requirements of Rule 9(b) satisfied where the plaintiff described specific instances where the technician of a car manufacturer acknowledged certain defects in the vehicle, *Alin v. Am. Honda Motor Co.*, Inc., No. Civ. 08-4825 (KSH), 2010 WL 1372308, at *10 (D.N.J. Mar. 31, 2010), and detailed the defendant's specific conduct and omissions, including the general dates of the alleged fraud, *Strzakowlski v. Gen. Motors Corp.*, No. Civ. 04-4740, 2005 WL 2001912, at *6 (D.N.J. Aug.16, 2005). The plaintiff did not satisfy Rule 9(b) where he made only made generic

8

references to the defendant's alleged fraud in charging late fees and did not identify specific instances, *Frederico*, 507 F.3d at 200, and alleged only that the plaintiff had purchased the product, the product was defective, the defendant was aware of the product's defective nature, and the defendant did not reveal the defect, *Rait v. Sears, Roebuck and Co.*, No. 08-2461, 2009 WL 250309, at *4 (D.N.J. Feb.3, 2009). Here, Plaintiffs attached the written agreement that constituted an alleged unlawful practice and referenced a specific encounter between a Spark representative and Melville. These averments are of specific circumstances where Spark allegedly committed fraud. They satisfy Rule 9(b)'s particularity requirement, and as such the Court denies Spark's Motion to Dismiss as to the NJCFA claim.

      **B.**      **Count II — Breach of Contract**

To state a valid breach of contract claim under New Jersey law, a plaintiff must establish that: (1) a valid contract existed between the plaintiff and defendant, (2) the defendant breached the contract, (3) the plaintiff performed her obligations under the contract, and (4) the plaintiff incurred damages as a result of that breach. *See Nat'l Util. Serv., Inc. v. Chesapeake Corp.*, 45 F. Supp. 2d 438, 448 (D.N.J. 1999). Spark argues that Plaintiffs fail to state a claim for breach of contract. The Complaint notes that the CDS stated Spark charges energy prices based on market conditions; alleges that Spark breached that provision by setting rates higher than and unrelated to those of other energy suppliers; Plaintiffs performed their obligations under the contract; and Plaintiffs paid more for energy as a result of Spark's breach. The Complaint supports these contentions by attaching a copy of the CDS and listing rates billed by SPARK and another energy provider. Such evidence is enough to show a plausible breach of contract claim, and the Court denies Spark's Motion to Dismiss as to this count.

### C. Count II — Covenant of Good Faith and Fair Dealing

Every contract in New Jersey contains an implied covenant of good faith and fair dealing. *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assoc.*, 864 A.2d 387, 395 (N.J. 2005). To state a claim for breach of the implied covenant, a plaintiff must demonstrate that: "(1) a contract exists between the plaintiff and the defendant; (2) the plaintiff performed under the terms of the contract unless excused; (3) the defendant engaged in conduct, apart from its contractual obligations, without good faith and for the purpose of depriving the plaintiff of the rights and benefits under the contract; and (4) the defendant's conduct caused the plaintiff to suffer injury, damage, loss or harm." *Wade v. Kessler. Inst.*, 778 A.2d 580, 586 (N.J. Super. Ct. App. Div. 2001), *aff'd as modified*, *Wade v. Kessler Inst.*, 798 A.2d 1251 (N.J. 2002). However, a plaintiff "may not maintain a separate action for breach of the implied covenant of good faith and fair dealing [where] it would be duplicative of [its] breach of contract claim." *Hahn v. OnBoard LLC*, No. Civ. 09-3639 DRD MAS, 2009 WL 4508580, at *6 (D.N.J. Nov. 16, 2009). In the instant case, the Complaint alleges that Spark violated the covenant of good faith and fair dealing by imposing rates that "bear no reasonable relationship to market rates" and argues that Spark "should have billed . . . at a reasonable, market-based rate as promised." Compl. ¶ 52–53. These allegations are ones that arise from the contract itself — they center on what the CDS promised and whether Spark fulfilled that promise. Accordingly, the claim for breach of the covenant of good faith and fair dealing is duplicative of the claim for breach of contract, and the Court dismisses it with prejudice.

### D. Count III — Unjust Enrichment

Plaintiffs, in the alternative, bring an unjust enrichment claim against Spark. To state a claim for unjust enrichment, a plaintiff must allege: "(1) that the defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant is inequitable."

10

*Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 519 (D.N.J. 2009), *aff'd*, 374 Fed. Appx. 341 (3d Cir. 2010) (quoting *Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*, 677 A.2d 747, 753 (N.J. 1996)). Where a valid contract governs the parties' rights and obligations, a party cannot bring a claim for unjust enrichment. *See Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 311 (3d Cir. 1982). In such an instance, the express contract binds the parties, and the court has no grounds from which to find an implied promise concerning the same subject matter. *See Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 227 (3d Cir. 1983). Even where the plaintiff pleads unjust enrichment in the alternative, "pleading both breach of contract and unjust enrichment is plausible only when the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy." *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 (3d Cir. 2014). Here, Spark does not dispute the validity of the CDS, the contract that binds the parties. Accordingly, the Court dismisses the unjust enrichment claim with prejudice.

### E.  Improper Parties

Spark additionally moves to dismiss Spark Energy, Inc. as a defendant because Spark Energy, Inc. allegedly only provides electricity and not natural gas, and Spark Energy Gas, LP as a defendant because it allegedly was succeeded in interest by Spark Energy Gas, LLC. On a motion to dismiss, the Court takes the allegations in the Complaint to be true, and as such does not have a basis to dismiss the named Defendants. *See Gilbertson v. Hilton Wolrdwide, Inc.*, No. 12-5124 (FLW)(DEA), 2013 WL 1352146, at *4 n.6 (D.N.J. Apr. 2, 2013); *Bayer v. Fluor Corp.*, 682 F. Supp. 2d 484, 496 (E.D. Pa. 2010). The Court will deny Spark's request to dismiss and replace the defending parties.

## IV.     CONCLUSION

For the foregoing reasons, Spark's Motion to Dismiss is **GRANTED IN PART**. Count II's claim of breach of the covenant of good faith and fair dealing and Count III are **DISMISSED WITH PREJUDICE**.


Dated:   11/15/2016                                                          s/ Robert B. Kugler

                                                                                   ROBERT B. KUGLER

                                                                                   United State District Judge