# GOLOMB & HONIK

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1515 Market Street
Suite 1100
Philadelphia, PA 19102
Phone: 215-985-9177
Fax: 215-985-4169
www.golombhonik.com

Richard M. Golomb
rgolomb@golombhonik.com

March 8, 2017

Honorable Joel Schneider, U.S.M.J.          **VIA CM/ECF ONLY**
UNITED STATES DISTRICT COURT
 FOR THE DISTRICT OF NEW JERSEY
Mitchell H. Cohen Building
 & U.S. Courthouse
4th and Cooper Streets
Camden, NJ 08101

      Re:    *Melville v. Spark Energy, Inc., et al.,*
              Case No. 1:15-cv-08706-RBK-JS (D.N.J.)

Dear Magistrate Judge Schneider:

      We write on behalf of Plaintiff John Melville in the above-referenced action pursuant to Paragraph 3 of Your Honor's January 20, 2017 Scheduling Order (ECF 27). The Scheduling Order set March 14, 2017 as the deadline by which each side would respond to the opposing side's previously-submitted discovery dispute letters. *Id.* However, given that the Court has now scheduled a telephonic conference on the discovery dispute issues for March 10, 2017, Plaintiff respectively submits this response letter now.

      In Plaintiff's opening letter, Plaintiff identified two issues ripe for adjudication: (i) the geographic scope of discovery; and (ii) dates certain for Spark's production of documents. *See* ECF 31. Spark's opening letter substantively addressed the first issue, but not the second issue. *See* ECF 30. Spark's opening letter also requested that Plaintiff be ordered to produce a copy of his driver's license, and his fee agreement with his counsel. *Id.* Plaintiff addresses each of these issues below.

**I.**      <u>Geographic Scope of Discovery</u>

      In resisting any discovery outside New Jersey or the PSE&G service area, Spark improperly seeks to inject substantive, fact-based legal arguments into the current dispute, which is only a discovery matter. Spark is correct that the Amended Complaint alleges a nationwide breach of contract claim, on behalf of all variable-rate natural gas customers. That alone justifies

## GOLOMB & HONIK, P.C.

Honorable Joel Schneider
Re: *Melville v. Spark Energy, Inc., et al.*
March 8, 2017
Page -2-

---

nationwide discovery. *See, e.g., U.S. ex rel. Fry v. Guidant Corp.*, No. 3:03-0842, 2007 WL 4255275, at *2 (M.D. Tenn. Nov. 30, 2007) (overruling discovery objection seeking to limit geographic scope when complaint contained nationwide allegations); *see also In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 7200711, at *4 (E.D. Pa. Oct. 29, 2004); *Kellam Energy, Inc. v. Duncan*, 616 F. Supp. 215, 218-220 (D. Del. 1985).

Judge Kugler has already determined that Plaintiff Melville adequately states a breach of contract claim based on the ambiguity in his own contract with Spark about whether the rates Spark charged him (and other putative New Jersey class members) were in fact based on "market conditions." *See* ECF 14 at 9. To the extent other nationwide class members' contracts are substantially similar to Plaintiff Melville's, the same would be true for them as well. Those contracts (not all copies, but exemplars) are an explicit category of documents that Plaintiff seeks in discovery to support his nationwide claim. There is no requirement, as Spark insinuates, that Plaintiff must attach a copy of every putative nationwide class member's contract to the Amended Complaint. *See* ECF 30 (complaining that "the only documents attached to the Amended Complaint" are Plaintiff's own agreement and related documentation). Indeed, as discovery progresses, Plaintiff would be free to amend the complaint further and conform it to the evidence unearthed through discovery. Spark cannot withhold these contracts and other nationwide documents, and then chide Plaintiff for lacking evidence that is within Spark's possession, custody, and control, but which it refused to produce to Plaintiff.

Simply put, as things currently stand, under the operative complaint, nationwide variable-rate natural gas customers are in this case. Discovery has commenced. Discovery is supposed to be proceeding apace towards the May 31 class certification discovery deadline. Spark's effort to unilaterally limit the geographic scope of discovery essentially equates to an improper attempt to grant itself a partial stay of discovery without making any showing. *See, e.g., Maher Terminals, LLC v. Port Auth. of NY & NJ*, No. 12-6090, 2013 WL 2253532, *3 (D.N.J. May 22, 2013) ("the burden rests squarely on defendants to make such a showing because a stay of discovery is not preferred") (internal quotations omitted); *see also, e.g., U.S. v. Pechiney Plastic Pkg., Inc.*, No. 09-5692, 2013 WL 3336792, at *4 (D.N.J. July 2, 2013) (denying defendant's requested stay because stay is an "extraordinary remedy," and to extent defendant speculated about costs and burden, "the Court can cross that proverbial bridge when the parties reach it"); *In re Plastics Additives Antitrust Litig.*, Civ. No. 03–2038, 2004 WL 2743591, at *7 (E.D. Pa. Nov. 29, 2004) (court has responsibility to "keep its docket moving to provide litigants with a timely and effective resolution of their claims," and granting stay would hinder court's responsibility to control the disposition of the matter). This Court should reject Spark's backdoor effort to obtain a partial stay of discovery.

GOLOMB & HONIK, P.C.

Honorable Joel Schneider
Re: *Melville v. Spark Energy, Inc., et al.*
March 8, 2017
Page -3-

---

Also, as Your Honor recognized during the Rule 16 conference on January 19, 2017, discovery proceeds much more efficiently, for all sides, when it is not done in piecemeal. Yet, that is exactly what Spark seeks to do here. It intends to quarantine responsive documents on the basis of geography now, but may produce them down the road. By that time, however, this case will be on or beyond the doorstep of the Court's May 31, 2017 deadline for the completion of class discovery. All discovery should proceed now.

Moreover, Spark has not made any particularized showing whatsoever as to why nationwide geographic scope of discovery poses any undue burden. Spark cannot resist discovery on vague, unsupported assertions about speculative costs and burden. *See, e.g., Residential Constructors, LLC v. Ace Prop. & Cas. Ins. Co.*, No. 2:05CV01318, 2006 WL 3149362, at *9 (D. Nev. Nov. 1, 2006) ("mere statement that complying with the discovery request will require 'numerous man hours'" is "not sufficient" to oppose discovery on grounds of purported burden). For instance, Spark has not even suggested, let alone shown, that the discrete categories of documents Plaintiff seeks might reside with different custodians than those who will possess the same documents for New Jersey only. Similarly, Spark has yet to identify where responsive documents reside; Plaintiff suspects they mostly reside in Spark's headquarters, such that Spark will not need to search for and produce documents from many locations scattered across several states. Notably, Spark has not said otherwise.

Compounding the problem is Spark's failure to provide any organizational or custodial information at all, which would enable Plaintiff or this Court to assess Spark's position. As Spark has not provided any information about its proposed custodians or document locations, Spark's basis for resisting discovery cannot even be tested. This routine, preliminary discovery should have been produced by now. *See, e.g., Carlin v. DairyAmerica, Inc.*, No. 1:09-CV-0430 AWI, 2013 WL 5670864, at *14 (E.D. Cal. Oct. 16, 2013) (noting that disputes over custodians are "the sort of evidentiary conflicts normally negotiated during discovery"); *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 109 (E.D. Pa. 2010) ("Among the items about which the court expects counsel to reach practical agreement without the court having to micro-manage e-discovery are search terms, date ranges, key players and the like."). In sum, Spark "may not unilaterally take it upon [itself] to limit the scope of discovery" and carve-out all other geographies, while simultaneously withholding organizational and custodial information. *Clarke v. Epco, Inc.*, No. CIV.A. 208CV103KSMTP, 2009 WL 1259460, at *1 (S.D. Miss. May 1, 2009); *see, e.g., Molex v. San Francisco*, No. C-4:11-1282-YGR KAW, 2012 WL 1965607, at *4 (N.D. Cal. May 31, 2012) (producing party's "attempt to unilaterally limit the scope of discovery . . . is improper.").

**II.    Spark Should Produce Responsive Documents and Information By Dates Certain**

While Spark claims that it "intends to move quickly to make productions and will work with Plaintiff on a reasonable timeline," ECF 30 at 2, the reality is that Spark has not produced a single document since the Rule 16 conference in January 2017. In fact, since this action commenced over one year ago on December 17, 2015, to date, Spark has produced only *three*

GOLOMB & HONIK, P.C.

Honorable Joel Schneider
Re: *Melville v. Spark Energy, Inc., et al.*
March 8, 2017
Page -4-

---

*pages*, and a single voicemail. By comparison, Plaintiff Melville, an individual consumer, has produced 560 pages of documents, and is preparing to produce more imminently. Plaintiff shares Spark's hope that the two sides can "work[] together to complete discovery in an amicable manner," *id.* at 1. But given the pace of Spark's production to date (or lack thereof), and the looming May 31 deadline for the completion of pretrial factual discovery as to class certification (*see* ECF 27, ¶ 4), this Court should direct Spark to complete its production by March 17, 2017 – especially the production of documents that Spark has already agreed to produce.

### III.    The Court Should Deny Spark's Requests For Plaintiff's Driver's License and Fee Agreement

Spark's request that this Court order Plaintiff Melville to produce a copy of his driver's license and fee agreement with his counsel (*see* ECF 30 at 3-4), should be summarily denied. Neither of these items is relevant to any party's claims or defenses. *See* Fed. R. Civ. P. 26(b).

***Driver's License.*** Spark conjectures that it *may* need Plaintiff's driver's license number (or social security number) because this "*could* facilitate a more thorough background check." *See* ECF 30 at 4 (emphasis added). This assertion is specious at best. Assuming a background check is even relevant to either party's claims or defenses, Spark already has sufficient information to conduct a background check. Spark has Plaintiff's full name and address, both from its own records and from those records produced by Plaintiff in this litigation. Spark makes no showing that this information is insufficient to let it conduct some sort of "background check," or that it is confused because, e.g., more than one "John Melville" has lived at the address which Spark already has (which is not the case). Indeed, Spark merely speculates that Plaintiff's driver's license or social security number "*could*" facilitate a background check. Because this sensitive personal information is so irrelevant to any party's claims or defenses, courts routinely disallow discovery of it. *See, e.g., Tillman v. Larpenter*, No. 15-4588, 2016 WL 5115495, at *2 (E.D. La. Sept. 21, 2016) ("Plaintiff's driver's license is irrelevant to any claim or defense"); *Montoya v. S.C.C.P. Painting Contractors, Inc.*, 530 F. Supp. 2d 746, 749 (D. Md. 2008) ("courts have denied defendants' requests to discover the addresses, social security numbers, and driver's license numbers of named plaintiffs and putative class members"). The only authority Spark cites for the discoverability of this highly sensitive personal information is the New Jersey *state* court form interrogatories. Yet, these explicitly relate only to "personal injury" cases, not breach of contract or consumer fraud cases. *See* Appendix II – Interrogatory Forms, *at* http://www.judiciary.state.nj.us/rules/app_2.pdf (last accessed Mar. 7, 2017). This action, of course, is not a motor vehicle accident or other type of personal injury case.

***Fee Agreement.*** Spark's claim for Plaintiff's fee agreement with his counsel similarly fails. Spark does not cite any authority for this request. Instead, it once again speculates that it "*may* be relevant at a future date if Plaintiff's counsel seeks fees[.]" ECF 30 at 4 (emphasis added). Spark is incorrect. Plaintiff's fee agreement with his counsel, a privileged communication, is neither relevant nor discoverable. Many courts in this District and others, including this Court, have explicitly held that a proposed class representative's fee agreement

## GOLOMB & HONIK, P.C.

Honorable Joel Schneider
Re: *Melville v. Spark Energy, Inc., et al.*
March 8, 2017
Page -5-

---

with his counsel is not discoverable. *See, e.g., In re Riddell Concussion Reduction Litig.*, Civ. No. 13-7585(JBS/JS), 2016 WL 7325512, at *3 (D.N.J. Jan. 19, 2016) (Schneider, M.J.) ("Fee agreements are generally not discoverable unless the party seeking the discovery makes a preliminary showing of a relevant conflict or a *prima facie* challenge to the class representatives' adequacy to act as a class representative. Defendants have not made this showing."); *In re Front Loading Washing Machine Class Action Litig.*, Civ. A. No. 08-51(FSH)(MAS), 2010 WL 3025141, at *4 (D.N.J. July 29, 2010) ("while discovery is broad at the pretrial stage, this Court finds that Defendant failed to demonstrate how the information is relevant or necessary. Even assuming *arguendo* that the retainer agreements are relevant and may lead to admissible evidence, this Court nonetheless finds that disclosure is unwarranted[.]"); *see also, e.g., Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 322 (N.D. Ohio 2009); *In re Intel Corp. Microprocessor Antitrust Litig.*, 526 F. Supp. 2d 461, 465-66 (D. Del. 2007); *Manual for Complex Litigation* (4th Ed.) § 21.141 ("Precertification inquiry into the named parties' finances or the financial arrangements between the class representatives and their counsel are rarely appropriate[.]").

For these reasons, this Court should deny Spark's requests.

Respectfully submitted,

*/s/ Richard Golomb*

Richard M. Golomb
**Golomb & Honik, P.C.**

RMG/ecm
cc:   All counsel (via CM/ECF)