# BakerHostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

Eric R. Fish
direct dial: 212.589.4647
efish@bakerlaw.com

June 7, 2017

*VIA ECF*

Honorable Joel Schneider, U.S.M.J.
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey  08101

Re:   *Melville v. Spark Energy, Inc., et al.*
      Case No. 1:15-cv-08706-RBK-JS

Dear Judge Schneider:

In accordance with the Court's Amended Scheduling Order (ECF No. 42), Defendants Spark Energy Inc. and Spark Energy Gas, LLC ("Spark") file this response to Plaintiff John Melville's May 31, 2017 dispute letter. Although this letter may be moot in light of Your Honor's June 2, 2017 Letter Order ("Letter Order," ECF No. 44), we felt compelled to respond.

Spark takes issue with Plaintiff's mischaracterizations regarding Spark's purported non-compliance with its discovery obligations and the insinuations that Spark has purposely delayed discovery, which are not supported by the record. In light of the fact that Your Honor is not ascribing blame to either party and has already issued the Letter Order, Spark will not respond to every inaccuracy in Plaintiff's dispute letter. However, the record must be corrected on at least a few issues.

Background

Plaintiff's claim that "we are in essentially the same position as several months (and two Court conferences ago," (ECF No. 43, p. 2), is hyperbole. The fact is that during this time period, Spark has worked diligently to advance the progress of discovery in this matter, including answering interrogatories, serving supplemental disclosures, providing "custodial information" at the request of Plaintiff's counsel, and producing over 10,000 pages of responsive material in multiple rolling productions. Spark has also collected over ninety-six (96) gigabytes (GB) of electronically stored information (ESI), engaged an outside vendor to process and host the data,

Honorable Joel Schneider, U.S.M.J.
June 7, 2017
Page 2

and to date has reviewed 20.8 GB of the 96 GB of ESI collected (prioritizing certain custodians at Plaintiff's request).[1]

Nationwide Discovery

Plaintiff asserted that Spark's search terms were "vastly under-inclusive" because they were limited to New Jersey. (ECF No. 43, pg. 4). Plaintiff, however, neglected to mention that the nationwide discovery issue was the subject of multiple prior dispute letters (ECF Nos. 30, 31, 33, 34) and a telephonic conference with the Court on March 10, 2017. The Court then made rulings that were memorialized in its March 10, 2017 Order. (ECF No. 36) (the "March 10th Order"). Paragraph 1 of the March 10th Order permits limited discovery of three categories of documents outside of New Jersey. Paragraph 2 then states that the Order is "without prejudice to plaintiff's right to request additional 'nationwide' discovery *after defendant's Motion to Dismiss is decided*." (*Id.*) Spark has abided by the March 10th Order since that time and has produced documents and information accordingly. Although Spark's Motion to Dismiss the "nationwide" allegations is still pending before the Court, Your Honor's Letter Order includes the directive that "the scope of discovery is determined by the allegations in plaintiff's amended complaint." (ECF No. 44, p. 2). We therefore respectfully seek clarity on this issue. If the March 10th Order is being vacated and nationwide discovery on every issue is now permitted, Spark will abide by such a ruling.

Document Custodians

Plaintiff claims "[w]e still lack basic information about potential document custodians." (ECF No. 43, p. 2). This allegation is inconsistent with the record. In particular, Plaintiff's correspondence to the Court failed to mention that Spark has provided information about custodians through initial disclosures, interrogatory responses, document production (including organizational charts), and letters from Spark's counsel. Indeed, Plaintiff already has job titles for each potential custodian identified in Plaintiff's May 16, 2017 letter. Plaintiff also claims that all of this "custodial" information had been "formally requested" in requests for production and interrogatories, but this is inaccurate. (*See* ECF No. 43, Ex. D.) The only "job responsibilities" requested were for Spark's IT personnel. (*Id.* at RFP No. 34). Thus, contrary to Plaintiff's misplaced accusations, Spark has complied with its discovery obligations in this regard. Nevertheless, Spark is mindful of the admonitions in Your Honor's Letter Order, and will further provide description of "job responsibilities" for each custodian by June 9, 2017.

---

[1] Plaintiff claims that Spark only said it "might" utilize search terms disclosed in Spark's May 17th letter. (*See* ECF No. 43, p. 4). This is inaccurate. Spark made it clear in writing and in telephone calls that it had already begun the process of collection, processing, and reviewing data that resulted from a run of the first two search terms. Indeed, that process began in March.

Honorable Joel Schneider, U.S.M.J.
June 7, 2017
Page 3

### Defendants' Search Terms and Production of ESI

Plaintiff did not provide any suggestions regarding search terms for electronic discovery until May 19, 2017. Indeed, we explained some of the issues with ESI in various letters and telephone discussions with Plaintiff's counsel beforehand and even offered for Plaintiff to suggest search terms.[2] Prior to the May 16, 2017 status conference, Plaintiff stipulated that there were no disputes if the parties could obtain a discovery extension. (ECF No. 40.) In fact, Plaintiff's view had been that they were not interested in a "data dump," and the parties were planning to work cooperatively on ESI issues.

In the meantime, Spark proceeded with diligently collecting data from a search of email files of various custodians using two search term combinations. Running Spark's two search term combinations resulted in **36,011** document hits, and **96.4 GB** of data. The data was then transferred to a third-party vendor who "pre-processed" (which involves mainly de-duplication) the data. After de-duplication, the resulting data set consisted of **30,392** documents and **78.5 GB**.

Of this amount, approximately 20.8 GB (the portion of the overall collection that included the names of certain individuals, prioritized for review at Plaintiff's counsel's request) have already been reviewed and as of the date of this letter, and Spark's vendor is currently preparing Spark's eight rolling production of documents to Plaintiff.

### Plaintiff's Proposed Search Terms

On May 19, 2017—less than two weeks prior to submitting its dispute letter to the Court—Plaintiff's counsel sent a letter that included 71 proposed search term combinations. This was the first time Plaintiff provided any input on search terms, and the newly proposed terms contain numerous overbroad combinations that belied Plaintiff's expressed intention to avoid a "data dump."

Spark has now run each of Plaintiff's 71 proposed search term combinations through the email files of the custodians previously disclosed to Plaintiffs (and now including Mr. Kroeker[3]). The searches result in **4,704,989** document hits. A list of individual document hits for each search term combinations proposed by Plaintiff is being provided to Plaintiff's counsel. Based on information received from Spark's outside vendor, we estimate that after de-duplication, up to **3.97 million documents** and over **10,000 GB of data** (even if no additional custodians are added) would need to be processed, hosted, reviewed by Spark's attorneys, and responsive documents produced. The estimated cost of such a production would be in the millions of

---

[2] Notably, Plaintiffs did not attach a May 3, 2017 letter sent by Spark's counsel. There is no need to attach it here, but we only mention it because of Plaintiff's one-sided recitation of events.
[3] Spark maintains its position that Mr. Kroeker is unlikely to have discoverable knowledge, and reserves its right to object to further discovery regarding Mr. Kroeker, including without limitation under the *Apex* doctrine.

Honorable Joel Schneider, U.S.M.J.
June 7, 2017
Page 4

dollars, which would clearly be prohibitive and disproportionate to the discovery needed in this case.

Pursuant to the Court's Letter Order, Spark will submit a list of proposed alternative search terms by June 9, 2017. We are hopeful that the parties can resolve their issues in advance of the June 20, 2017 conference to settle on a more reasonable and proportionate number of documents. If not, we can provide a breakdown of the estimated cost to process, host, review, and produce such a large number of documents, which will demonstrate that the burden Plaintiff seeks to impose on Spark is extremely disproportionate to the needs of the case, particularly while Spark's Motion to Dismiss remains pending and before any purported class has been certified.

Conclusion

Plaintiff's May 31, 2017 letter misconstrues the history of discovery in this matter and attempts to unjustifiably criticize Spark's diligent efforts, while ignoring Plaintiff's own lack of interest until after the March 16, 2017 conference. Contrary to Plaintiff's assertions, Spark has complied with its discovery obligations. Regardless, Spark is mindful of Your Honor's desire to see discovery progress in this case, and is committed to fully comply with the Letter Order.

Should Your Honor have any questions, please do not hesitate to contact us.

Respectfully submitted,

*/s/ Eric R. Fish*

Eric R. Fish

cc:   Richard M. Golomb, Esq.
      Kenneth J. Grunfeld, Esq.
      David J. Stanoch, Esq.
      Michelle D. Pector, Esq.
      Joshua C. Thomas, Esq.